80

La Arcada Bondholders Committee, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 75684.   Promulgated November 17, 1936.

*Arthur J. Hair, Esq., G. E. Walling, Esq.,* and *Lawrence E. Tripp, Esq.,* for the petitioner.

*Frank M. Thompson, Esq.,* for the respondent.

82

STERNHAGEN: The issue is the amount which the petitioner was, in the taxable year 1932, entitled to deduct, under section 23 (k) of the Revenue Act of 1928, as a reasonable allowance for the exhaustion, wear, and tear of the La Arcada building, including a reasonable allowance for obsolescence. The Commissioner, in determining the deficiency, used a straight line annual depreciation rate of 2½ percent, and this rate the taxpayer does not contest. The controversy turns upon the basis to which this rate should be applied, the Commissioner having determined a basis of $188,334.66 and the petitioner claiming a basis of $350,000. These figures represent the respective contentions of the parties to this proceeding as to the petitioner's cost of the building at the time, July 29, 1929, when the building was acquired at the so-called foreclosure sale. The respondent's determination and contention is founded upon the proposition that the accepted bid of $230,000 must be taken as the cost to the petitioner of both the land and the building, of which a proper apportionment, namely 69.6 percent, is applicable to the depreciable building. The petitioner, contesting the use of the bid price, seeks instead to prove that the actual value of the land and building is greatly in excess of the bid price, and contends that the actual value of the building at the time of its acquisition in 1929 is to be taken as the depreciation base.

Prior decisions establish the proposition that the bid price, although not to be disregarded as evidence, is not conclusive of cost of depreciable property acquired in foreclosure or comparable circumstances. *Suncrest Lumber Co.*, 25 B. T. A. 375; *Newberry Lumber & Chemical Co.*, 33 B. T. A. 150 (on review, C. C. A., 6th Cir.).; *Pelham Hall Co.*, 33 B. T. A. 329. Consistently with this doctrine, the evidence in this proceeding shows that the bid of $230,000, which was the only bid made at the sale, was prompted not by the value of either the property being sold or the bonds used for its payment, but by a convention to offer no more than 50 percent of the face amount of the outstanding bonds, which convention had been established by the trust companies and the title companies of the community as a minimum sale price of property held as collateral for defaulted bonds. In view of the fact that the terms of the sale under the trust instrument permitted the bondholders to use the bonds in payment of the purchase price, it was of small moment to them at what precise figure they bid for the property. The only difference which the amount of their bid would make would be to control the amount of cash to be paid to the nondepositing bondholders. These owned approximately 11 percent of the outstanding bonds.

The basis for depreciation in this case, as in others, is the cost of the depreciable property. Revenue Act of 1928, sec. 114 (a). The cost is the sum of the money and the actual value of property given up for the depreciable property received. Thus it is necessary to ascertain from the evidence the actual value of the bonds given up by the petitioner; and this, plus the money, is to be taken as the cost of the entire property acquired, which cost must be properly apportioned between the nondepreciated land and the depreciable building. There is no direct evidence of the value of the deposited bonds, and such value can only be arrived at by considering all of the circumstances by which they were surrounded upon the date in question. Manifestly, since they were in default and the default was the occasion for the foreclosure, the bonds may not be regarded as worth more than par, or the property as worth, as petitioner contends, around $650,000. While due and respectful consideration has been given to the opinions of the petitioner's witnesses to this effect, the conclusions as to value which have been stated in the findings are the result of consideration of the facts and circumstances affecting such value as well as the several opinions in evidence. (Although it happens that the figure of $345,000 is the mean between the $230,000 bid and the $460,000 face value of the outstanding bonds, this is purely a coincidence and has not been arrived at by any arbitrary method like splitting the difference.)

The entire property, it has been found, had a fair market value of $345,000, of which approximately $240,000 was applicable to the depreciable building. Since the bondholders were, by the terms of their bonds, entitled by foreclosure to take the property for their bonds and the comparatively slight expense of sale, taxes, etc., it is fair to say that all of the outstanding bonds ($460,000) were worth as much as the property ·for which they could be redeemed, minus only the amount of the expense, viz., $16,229.02. The bonds were thus worth .71472. But $50,500 of the outstanding bonds were not paid for the property but were discharged through the payment by the petitioner of $24,366.75. This left bonds of a face value of $409,500 and an actual value, at .71472, of $292,677.84 as paid for the property, plus $40,595.77 cash, a total cost of $333,273.61 for the entire property. This has been apportioned in the findings of fact upon the ratio used by the Commissioner and apparently not assailed by the petitioner and not overcome by any evidence, so as to result in a cost of the building of approximately $231,950. To such figure the undisputed rate of 2½ percent should be applied, to arrive at the correct allowance for the taxable year in question.

*Judgment will be entered under Rule 50.*